IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FILED IN OPEN COURT
10/21/2010
TIMOTHY M. O'BRIEN, CLERK
BY _____
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| Plaintiff, ) | |
| v. ) | No. 08-20168-01-KHV |
| CRB, INC., d/b/a AMERICAN ) BIOLOGICS, ) | |
| Defendant. ) | |

## PLEA AGREEMENT PURSUANT TO FED. R. CRIM. P. 11(c)(1)(C)

The United States of America, by and through Trial Attorney John W. M. Claud, Department of Justice Office of Consumer Litigation and Scott C. Rask, Assistant United States Attorney, and CRB Inc., d/b/a/ American Biologics ("the defendant"), the defendant, personally and by and through its attorney Cheryl Pilate, enter into the following plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** If the Court permits, the defendant agrees to plead guilty to Count 1 of the Superseding Indictment, which charges a violation of Title 18, United States Code, Section 371, that is, engaging in a Conspiracy to commit mail fraud, introduce misbranded drugs into interstate commerce, receive misbranded drugs in interstate commerce, introduce adulterated or misbranded medical devices into interstate commerce, and to defraud the Food & Drug Administration ("FDA"). By entering into this plea agreement, the defendant admits to knowingly committing this offense, and to being guilty of this offense. The defendant agrees to plead guilty by October 25, 2010. The defendant understands that the maximum sentence that may be imposed for Count 1 of the superseding indictment is not more than five

years of imprisonment, a fine determined under 18 U.S.C. § 371 and 18 U.S.C. § 3571, three years of supervised release, restitution totaling $40,372.08 to Sean Walby and Malgosia Cegielski, a $100 mandatory special assessment, and a money judgment in connection with the forfeiture allegation. The United States agrees that at the time of sentencing it will move for dismissal of the remaining counts of the indictment.

    2.    **Forfeiture of Assets.**  The defendant also admits to the Forfeiture Allegation in the superseding indictment and agrees not to contest the criminal forfeiture allegation, and in so doing, it forfeits all right, title, and interest. The defendant acknowledges and agrees that the forfeiture of substitute assets as authorized herein and pursuant to Title 21, U.S.C. § 853(p) to satisfy the money judgment of approximately $700,000, the specific amount to be determined by the parties, shall not be deemed an alteration of defendant's sentence or this agreement. The defendant acknowledges and agrees that the forfeiture of any property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture. The defendant agrees to the immediate entry of the preliminary order of forfeiture. The defendant further agrees that it will truthfully and accurately complete a financial disclosure form, prior to signing this agreement and will list all it assets and financial interests, and allow U.S. Probation to disclose all financial information they obtain during the presentence investigation and supervision of it. The defendant agrees to sign any and all documents necessary to effectuate the forfeiture and transfer of it interest and possession in the property to the United States. The defendant freely, voluntarily, knowingly, and intelligently waives any right to collaterally attack any matter in connection with this prosecution and sentence, including the forfeiture of assets.

3. **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

    At all times relevant to the Superseding Indictment, the defendant was a domestic corporation registered in the State of California. Its officers were Carole E. Bradford, Chief Executive Officer, and Chief Financial Officer; Robert W. Bradford, Chief Executive Officer and, according to the defendant's marketing materials and drug and device labeling, "Founder, Director of Research, and Scientific Director;" and, Brigitte G. Byrd, Chief Operating Officer. Their titles notwithstanding, all three of these named officers had authority at all relevant times to execute agreements for the company, and to conduct business for the company. The defendant was established by Carole Bradford and Robert Bradford for the purpose of creating and introducing into interstate commerce dietary supplements, and at all times relevant to this case, the drugs and the medical device at issue here.

    Robert Bradford is not a medical doctor, and has no medical or science degree from any accredited university in the United States. Robert Bradford was also the Chief Executive Officer, Founder, and Director of Research at the Robert Bradford Research Institute ("the Institute"). Carole Bradford was the Secretary and Chief Financial Officer of the Institute. The Institute claimed it had researched, developed, and was manufacturing, pursuant to 21 U.S.C. § 360, four "proprietary compounds:" Dioxychlor, Sulfoxime, Bio-Rizin, and Bismacine (hereinafter referred to collectively as "the four drugs"). Through the Institute and its principals, the defendant invented the Bradford Variable Projection Microscope System ("Bradford Microscope") ostensibly used to identify pathologies and risk factors in health and disease. Robert Bradford also claimed to be the sole proprietor of RWB Compounds, a sole proprietorship created during the course of the conspiracy. Marketing materials and drug and device labeling for the defendant's products often listed the credentials of the defendant, the Institute, and RWB Compounds and their principals so as to closely associate all of the entities together, and in fact the same principals have authority and control over all of these entities, providing no meaningful legal, corporate, or functional distinction between any of them. The defendant and the Institute were also affiliated with a hospital in Tijuana, Mexico. Robert Bradford claimed to be the "scientific advisor" to the hospital, where he and others conducted human intravenous drug infusions for, among other things, the treatment of Lyme disease at that hospital.

    Beginning in or about September 2001, the defendant and others developed a strategy for marketing a medical device and drugs as a means to ostensibly diagnose and treat Lyme disease, which the defendant claimed was the

underlying cause of many illnesses the medical community was not addressing, and could not address.

Beginning in or about April 2004, the defendant and others distributed through the Institute, a report or monograph entitled "Lyme Disease, Potential Plague of the Twenty-First Century – Detection Problems Resolved by imaging with the Bradford Variable Projection High Resolution Microscope." In this monograph, the defendant and others stated, among other things, that: (1) "Lyme disease has the ability to mimic many other diseases," and is commonly "associated" with a number of diseases as well, including but not limited to syphilis, depression, and Alzheimer's disease; (2) "it is estimated that Lyme disease may be a contributing factor in more than 50% of chronically ill people;" and, (3) most patients diagnosed as suffering from Chronic Fatigue Syndrome actually have Lyme disease.

The defendant and others created and executed a marketing plan through which they falsely promoted an epidemic of Lyme disease and created a demand for a microscope the defendant manufactured and claimed could diagnose the disease, and for drugs the defendant manufactured and claimed could cure the disease. The monograph made factual statements and cited sources as authority for those statements in order to convey credibility to the reader, when in truth and in fact those statements and sources were false or misleading. Neither the medical device nor the drugs that the defendant and others manufactured, marketed, and distributed had been reviewed, cleared, or approved by the FDA for any reason, nor were they exempt from such review by FDA.

The defendant, the Institute, and others, represented to purchasers that the Bradford Microscope: (1) enabled practitioners to perform functional assessments of their patients' health status; (2) was ideal for both clinical and research applications; (3) allowed the clinician-practitioner to, within minutes, quickly, easily, and cost-effectively detect subtle biochemical shifts that occur in the body thereby opening the way for innovative treatments as well as therapeutic follow-up and management of diseases and metabolic imbalances; and (4) detected Lyme disease. The defendant and the Institute marketed the Bradford Microscope and various Bradford Peripheral Blood Assessments ("Bradford Assessments") as part of "The International Metabolic Research and Development Project" that the defendant falsely claimed was "registered" with the FDA.

The FDA did not review, clear, or approve the Bradford Microscope or the Bradford Assessments for use or marketing in the United States for the assessment or diagnosis of Lyme disease, nor any other disease. The FDA did not review, clear, or approve any manufacturing and marketing of the Bradford Microscope and the Bradford Assessments in the United States, nor were they exempt from

4

such review by FDA.

In conjunction with the Bradford Microscope and the Bradford Assessments, the defendant and others marketed a "protocol" of the four drugs, which they manufactured in a make-shift laboratory located in the defendant's office in Chula Vista, California. To manufacture these drugs, the defendant and others, purchased several chemicals that were not certified or intended by their manufacturers for use in foods, drugs, or cosmetics for humans or animals. The defendant and others received these chemicals in California in interstate commerce, and then manufactured the four drugs with these chemicals and then shipped these drugs through interstate commerce to a pharmacy in Colorado Springs, Colorado, where the pharmacy dissolved the drugs into aqueous solutions, based on "protocols" that were specific directions issued by the defendant.

The defendant developed what it termed an "Antimicrobial Treatment" for diseases, including Lyme disease. As part of the "Antimicrobial Treatment" the defendant and others manufactured the four drugs. This "Antimicrobial Treatment" involved the intravenous injection of these drugs. The defendant made available "Antimicrobial Kits" containing the four drugs. Users purchased these drugs individually as well. The monograph directed that users take varying doses of these drugs in interval stages, and combined the use of these drugs with other nutrients and vitamins.

Bismacine is the trademarked name for an intravenous drug invented by Robert Bradford, manufactured by the defendant and others at the defendant's facilities. Bismacine is sometimes further dissolved into an aqueous solution and marketed and distributed by the defendant and others. The active ingredient in Bismacine is Bismuth Citrate. Bismuth is a heavy metal that may cause renal complications, as the kidneys have difficulty filtering heavy metals from the bloodstream. The defendant and others marketed and distributed Bismacine as a treatment for a variety of medical conditions, including Lyme disease.

Dioxychlor, Sulfoxime, and Bio-Rizin are the trademarks of intravenous drugs invented by the defendant, manufactured by the defendant and others at the defendant's facilities. They are further dissolved into an aqueous solution and marketed and distributed by the defendant and others. The defendant and others marketed and distributed Dioxychlor, Sulfoxime, and Bio-Rizin to treat a variety of medical conditions, including Lyme disease.

The defendant and others profited from the sale of both the medical device and the drugs listed above. For example, for the period October 2001 through 2008, the defendant received more than $700,000.00 for the Bradford Microscope

and the drugs described above. The sales of the Bradford microscope medical device and the drugs were often accomplished with shipments through the U.S. Postal Service or other commercial interstate carriers. Several of these shipments were from California to co-defendant John Toth in Kansas, which also included the labeling with claims or omissions concerning the diagnosis of Lyme disease.

The Institute, RWB Compounds, and the defendant are not registered with the FDA in any capacity as producers, manufacturers, preparers, propagators, compounders, or processors of either drugs or medical devices, as required by 21 U.S.C. § 360.

During the course of and in furtherance of the conspiracy and scheme, the defendant manufactured or caused the manufacture of the Bradford Microscope for sale in interstate commerce, and marketed it as, and falsely represented it to be a medical device for the diagnosis of diseases, including Lyme disease; the defendant manufactured and caused the manufacture of misbranded drugs, including the four drugs, and shipped and sold these misbranded drugs in interstate commerce; the defendant distributed or caused the distribution in interstate commerce, misbranded drugs, including the four drugs, some of which were intravenously injected into individuals seeking medical treatment; the defendant received or caused the receipt in interstate commerce, and thereafter delivered for pay or otherwise, misbranded drugs, including the four drugs; the course of and in furtherance of the conspiracy and scheme, the defendant failed to register with the FDA in any capacity as producers, manufacturers, preparers, propagators, compounders, or processors of either drugs or medical devices, knowing they were required to do so; the defendant made material misrepresentations or omitted material facts to diagnose, or cause the diagnosis of, Lyme disease in individuals; the defendant made material misrepresentations or omitted material facts to promote the use of intravenous injections of the four drugs to treat disease, including Lyme disease; and the defendant intravenously injected or caused the intravenous injection of Bismacine, which resulted in one individual in Kansas experiencing renal failure, and another individual in Kansas lapsing into a coma and eventually dying.

4. **Proposed (c)(1)(C) Sentence.** The parties propose, as an appropriate disposition of the case, a sentence of five years probation; all conditions of probation determined to be appropriate by U.S. Probation after completing its presentence investigation, to include a fine to be determined but not to exceed the statutory limitations of 18 U.S.C. § 3571; restitution totaling $40,372.08 to Sean Walby and Malgosia Cegielski; a forfeiture money judgment in the

amount of $700,000; and the mandatory special assessment of $100. The defendant shall also account in writing for any and all unsold microscope systems that remain in their inventory or possession. The defendant shall also notify FDA Office of criminal Investigations Special Agent Daniel Burke in writing of every purchaser of a Bradford microscope system. As an additional condition of probation, the defendant may continue to function as a dietary supplement business but shall not participate in any business venture in any manner whatsoever, directly or indirectly, that seeks to manufacture, promote, or in any way introduce any drugs or medical devices, or the labeling thereof, into interstate commerce, all as defined by the Food Drug and Cosmetic Act ("the Act"), 21 U.S.C. § 301, *et seq*. This condition of probation shall not be violated by a notice that such dietary supplements, or the labeling thereof, violates the Act, but such notice creates an affirmative duty for the defendant to correct the matter noticed, and the failure to do so would be a violation of the probation. The parties seek this binding plea agreement as an appropriate disposition of the case because it brings certainty to the sentencing process and assures that the defendant and the government will benefit from the bargain they have struck if the Court permits itself to be bound by the proposed sentence; the interests of justice are served by the sentence, thereby assuring that the sentence is consistent with the sentencing factors of 18 U.S.C. § 3553(a); and if the Court does not agree with the sentence, the parties may be restored to the positions they maintained prior to reaching this plea agreement. This agreement centers on the defendant's agreement to enter it guilty plea as soon as the Court's schedule permits, thereby preserving valuable Court, prosecution, public defender, probation office, U.S. Marshals Service and other law enforcement resources.

       5.      **Application of the Sentencing Guidelines.** The parties are of the belief that the

proposed sentence does not offend the now advisory sentencing guidelines, but because this proposed sentence is sought pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties are not requesting imposition of an advisory guideline sentence.

6. **Government's Additional Agreement.** In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas and the Office of Consumer Litigation also agree to not file any additional charges against it arising out of the facts forming the basis for the Indictment.

7. **Whether to Accept the Proposed Plea Agreement and Sentence is Up to the Court.** The Court has no obligation to accept the proposed plea agreement and sentence. It is solely within the Court's discretion whether to accept the proposed binding plea agreement as an appropriate disposition of the case.

8. **Withdrawal of Plea Permitted Only if the Court Does Not Accept the Plea Agreement and Proposed Sentence.** On the other hand, if the Court agrees to be bound by the proposed plea agreement and accepts the defendant's plea of guilty, the defendant will not be permitted to withdraw it. Only if the Court rejects the proposed plea agreement will the defendant be permitted to withdraw it guilty plea.

9. **Identification of Assets & Agreement Concerning Monetary Penalties.**

    a. The defendant agrees to disclose to law enforcement officials the existence and status of all monies, property or assets, of any kind in which it has sole, joint, or partial ownership or control OR was derived from or acquired as a result of, or used to facilitate the commission of the crimes charges. Furthermore, the defendant agrees to provide all of it financial information to the United States Attorney's Office at the same time that it provides such to the United States Probation Office as part of the presentence investigation procedure. The defendant consents to the release of the information from the United States Probation Office to the

8

      United States Attorney's Office should it neglect to separately provide such information to the United States Attorney's Office or the United States Probation Office, to participate in a pre-sentencing debtor's examination, which may include the taking of information from the defendant under oath.

  b. The defendant further agrees to prevent the disbursement of any monies, property, or assets derived from the crimes charged, or otherwise under it custody or control.  If the defendant fails to comply with this provision, then the United States is relieved of it obligation to recommend a sentencing reduction for Acceptance of Responsibility pursuant to U.S.S.G. § 3E1.1, to file a motion under U.S.S.G. § 5K1.1, or to make any other sentencing recommendations contained in this agreement.

  c. The defendant understands and agrees that pursuant to Title 18, United States Code, Section 3613, whatever monetary penalties are imposed by the court will be due and payable immediately and subject to immediate enforcement by the United States.  If the Court imposes a schedule of payments, the defendant understands that the schedule of payments is merely a minimum schedule of payments and not the only method, nor limitation on the methods, available to the United States to enforce the judgment.  If the defendant is incarcerated, it agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

  d. The defendant further agrees to pay restitution totaling $40,372.08 to Sean Walby and Malgosia Cegielski.

**10.** **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100 will be entered against the defendant at the time of sentencing.

**11.** **Waiver of Appeal and Collateral Attack.** If the Court agrees to the proposed plea agreement, the defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction, or the components of the sentence to be imposed herein (including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release).  The defendant is

9

aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal if the Court imposes the sentence requested by the parties. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change it sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2), and a motion brought under Fed. Rule of Civ. Pro. 60(b). However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(c), the defendant is released from this waiver and may appeal the sentence received as authorized by Title 18, U.S.C. § 3742(c).

**12.     Waiver of FOIA Request.**     The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, Title 5, U.S.C. § 552, or the Privacy Act of 1974, Title 5, U.S.C.§ 552a.

**13.     Full Disclosure by United States.**     The defendant understands the United States will provide to the court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning the background, character, and conduct of the defendant including the entirety of the defendant's criminal activities. The defendant understands these disclosures are not limited to the count to which the defendant has pled guilty. The United States may respond to comments made or

positions taken by the defendant or defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the court and the United States Probation Office.

14. **Parties to the Agreement.** The defendant understands this plea agreement binds only the defendant and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

15. **No Other Agreements.** The defendant has had sufficient time to discuss this case, the evidence, and this agreement with the defendant's attorney and defendant is fully satisfied with the advice and representation provided by defendant's counsel. Further, Carole K.E Bradford, an officer of the defendant, acknowledges that she has had the plea agreement read to her, understands it and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this plea agreement supersedes any and all other agreements or negotiations between the parties, and that this agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that the defendant is entering into this agreement and is pleading guilty because the defendant is guilty and is doing so freely and voluntarily.

_/s/ John W. M. Claud_    10/21/10
John W. M. Claud
Trial Attorney
Office of Consumer Litigation
Liberty Square Building, 6th Floor

450 5th Street NW
Washington, D.C. 20001
(202) 307-5247
(202) 514-8742 (fax)
John.Claud@usdoj.gov
District of Columbia Bar No. 497900

_____          Date: 10-21-10
Scott C. Rask
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
(913) 551-6730
(913) 551-6541 (facsimile)
Scott.Rask@usdoj.gov
Kan. Sup. Ct. No. 15643


_____          Date: 10/21/10
Carole Bradford, CEO
CRB, Inc., d/b/a/ American Biologics
Defendant

_____          Date: 10/21/10
Cheryl Pilate
Morgan Pilate LLC
142 N. Cherry
Olathe KS 66061
(913) 829-6336
Attorney for Defendant

12